NELLIE D. CLARK *vs.* ANDREW J. GILMAN, *et al.*

Somerset.   Opinion December 14, 1915.

*Floatable Stream.    Flowage.    Mill dam.    Riparian Owner.    Trespass quare clausum.*

The case comes up, on a report of all the evidence.   It is an action of trespass to real estate.   The defendants are the owners of mills and a mill dam across Ferguson Stream in Cambridge, Maine.   The plaintiff owns a small lot above the dam, partly covered by the flowage, and bounded on its easterly side "by the channel of the stream."   She caused a wharfing or abutment to be made upon her lot extending out to the easterly and southerly lines thereof, and in height about two feet above the top of the dam.   The abutment was rough and uneven, especially on its easterly side next to the channel, and the evidence shows that since it was built logs running against it in floating down the channel have caught on its uneven sides and been held there by the force of the current until poled off or otherwise removed by the log driver.   May 5, 1914, the defendants went upon this abutment for a few moments only and removed with pick poles some of their logs that were caught against it.   That is the alleged trespass.   It is admitted that the damage was nominal only.

*Held:*

1. The riparian owner's use and enjoyment of his property adjacent to a floatable stream is, in a sense, subject to the use of such stream by the public for the floating of logs, if reasonably exercised.   He is bound in the use of his property not to obstruct the reasonable use of the stream for such purpose.   The log driver also in using such stream for the passage of his logs is required to exercise reasonable care to prevent doing damage to the property of the riparian owner.

2. Where logs in their passage down a floatable stream, without the fault of the driver, are caught on the edge of the riparian owner's property, and the driver casually and from incidental necessity enters upon such property and releases the logs, doing no appreciable damage, trespass quare clausum will not lie.

3. Assuming, as we do, that the provision in the plaintiff's deed, that her lot was conveyed subject to be flowed, did not prevent her from using her lot in any manner that would not unreasonably obstruct the use of the stream as a public highway for the floating of logs thereon, we think the evidence plainly shows that the abutment which the plaintiff built on her lot was an obstruction to the passage of logs down the channel of the

stream. It materially interfered with the defendants' right to a reasonable use of the stream for floating logs to their mill. It was the existence of that structure placed there by the plaintiff that caused the logs to be stopped in their otherwise natural passage down the channel, and created the incidental necessity for the defendants to do the acts complained of. For that reason also we think this action of trespass does not lie in the plaintiff's favor, especially where no appreciable damage has resulted to her.

On report. Judgment for defendants.

An action of trespass quare clausum to recover damages of the defendant for going upon the dam or abutment and removing some of their logs that were caught against it.. The defendants pled the general issue and filed a brief statement alleging that they were the owners, on their own land, of water mills and a dam to raise water for working said mills below the land of plaintiff described in her writ.

The case is stated in the opinion.

*Hudson & Hudson,* for plaintiff.

*L. L. Walton,* for defendants.

SITTING: SAVAGE, C. J., SPEAR, KING, BIRD, HALEY, HANSON, JJ.

KING, J. This case comes up on report of all the evidence. It is an action of trespass to real estate. The defendants are the owners of mills and a mill dam across Ferguson stream in the town of Cambridge, Maine. The mill dam, or one on the same site, has existed for many years. The water raised by the dam forms a considerable flowage extending up stream in a southwesterly direction about three-quarters of a mile above the dam. Just above the dam the highway road crosses the stream and flowage on a bridge with two abutments, between which logs from above pass down to the mill. Above and near the bridge and highway the flowage spreads out somewhat to the west and then turns more sharply southerly, forming a small cove. There appears to be a margin of land between the highway, leading from the west end of the bridge, and the edge of the flowage along by the cove, that margin being quite narrow at the end of the bridge. The stream is a floatable one, capable of being used for the floating of logs, and has been so used for many years. Logs have been driven down the stream into the flowage

and thence down the flowage to the mill. And logs to a considerable extent have been landed on the flowage above the bridge. The defendant Gilman testified that since he became an owner in the mill, in 1902, logs had been landed above the bridge every year.

August 5, 1872, Nathan Clark who then owned the mills, dam, water rights, and the land flowed, at least so far as the plaintiff's land is involved, conveyed to one Alva Mitchell a certain lot of land described as follows: "It being a part of the Mill Lot, so called, in said town of Cambridge, commencing at a stake on the shore of the pond near the corner of Cole's shop and running northerly to the road line in the direction of the second post in the Bridge at the west end; thence easterly on the line of said road to the channel of the Stream; thence up the channel of the Stream fifty feet; thence westerly to the first mentioned bound subject to be flowed." It is to be observed that this lot is next westerly of the channel of the stream and in the corner formed by the channel and the highway or bridge, and extends up the channel into the flowage fifty feet. The title to this lot passed, through mesne conveyances, to the plaintiff by a deed dated December 19, 1900, with the same provision, "subject to be flowed." There was a building on the front of the lot next to the road and apparently towards the westerly side, but the water flowed in under the building.

After the plaintiff purchased the lot she caused a wharfing or abutment to be made upon the easterly and southerly sides of the lot, and apparently including the whole lot, to the height of about two feet above the top of the dam. It was built of drift logs, weighted with rocks and then covered with earth. On the easterly and southerly sides a cedar hedge was planted.

The photographs introduced show this structure to be very rough and uneven, especially on its easterly side next to the channel and at its southeast corner, with the ends of the logs of which it is built projecting irregularly, and with considerable openings between them. Its location adjacent to the channel of the stream, and its rough and irregular construction, seem to render it fit and likely to obstruct the passage of logs down the channel to the opening in the bridge; and the evidence clearly shows that since it was built logs running against it in floating down the channel have caught on its uneven sides and been held there by the force of the current until poled off or otherwise removed by the log driver.

On the 5th of May, 1914, the defendants went upon the abutment for a few moments only, and removed with pick poles some of their logs that were caught against it. That is the alleged trespass. It is admitted that the damage was only nominal.

The stream, as we have seen, is floatable, and as such may lawfully be used as a public highway upon which to float logs. The riparian owner, too, has the right to the use and enjoyment of his property. But the rights of the public to use a floatable stream and those of the riparian owner to use his land are both to be enjoyed with a proper regard for the existence and preservation of the other. The riparian owner's use and enjoyment of his property adjacent to a floatable stream is in a sense subject to the use of such stream by the public for the floating of logs, if reasonably exercised. He is bound in the use of his property not to obstruct the reasonable use of the stream for such purpose. The log driver also in using such a stream for the passage of his logs is required to exercise reasonable care to prevent doing damage to the property of the riparian owner. If these respective rights are so exercised then no substantial prejudice or inconvenience will result.

Applying these well settled principles to the facts and circumstances disclosed in the case at bar, we think the action is not maintainable.

The evidence amply shows that there was no want of reasonable care on the part of the defendants in their use of this stream in floating their logs down to their mill. It was not their fault that some of their logs were pushed by the current against this abutment and held there by its rough and uneven construction. That was the natural result arising from the character of the structure and its location adjacent to the channel of the stream. It could not be avoided without the use of some artificial means to keep the logs from going against the abutment in their passage by it. Were the defendants required to use such means? We think not under the facts and circumstances disclosed. The logs being driven were comparatively few. The defendants had the right to use the whole stream in floating them down, exercising reasonable care in so doing not to unnecessarily injure the plaintiff's property as a riparian owner. And it does not appear that such logs as were caught on the abutment did any injury to it. In this respect the case is not unlike

one where logs floating down a public stream catch upon the shore doing no injury to the riparian owner. In such case the log-driver cannot be held to an unreasonable use of the stream because he has not used means to prevent the logs touching the shores.

Here then is a case, in the most favorable view for the plaintiff, where a log in its passage down a floatable stream, without fault of the driver, is caught on the edge of the riparian owner's property, and the driver casually and from incidental necessity enters upon such property and releases the log, doing no appreciable damage. For such an act does trespass quare clausam lie? We think not. In *Hooper* v. *Hobson,* 57 Maine, 273, 276, this court, speaking by Barrows, J., said: "It is not, however, to be inferred that every casual landing upon the bank by those employed in driving a floatable stream, would be the ground of an action by the proprietor of the land." And it is there suggested that the privilege of going upon adjoining lands to remove timber lodged thereon, after the tender of compensation for damages, which is conferred by c. 43, sec. 8, R. S., would seem to imply that where no actual damage is caused in so doing, no action would lie. The right to use a floatable stream as a public highway for the transportation of logs and lumber is governed by the same principles as the right to use a public highway on land. Mr. Justice Holmes, in his work on the Common Law, at page 118, says: "That if a man be driving cattle through a town, and one of them goes into another man's house, and he follows him, trespass does not lie for this." Such casual entry upon land adjoining a public highway is considered an inevitable incident to the right to use the highway,

But we feel entirely clear in the opinion that this action does not lie for another reason. Assuming, as we do, that the provision in the paintiff's deed that her lot was conveyed subject to be flowed, did not prevent her from using her lot in any manner that would not unreasonably obstruct the use of the stream as a public highway for the floating of logs thereon, we think the evidence plainly shows that the abutment which the plaintiff built on her lot is so located and constructed that it is an obstruction to the passage of logs down the channel of the stream. It materially interfered with the defendants' right to a reasonable use of the stream for the floating of their logs to their mill. It was the existence of that structure placed there

by the plaintiff that caused the logs to be stopped in their otherwise natural passage down the channel, and created the incidental necessity for the defendants to do the acts complained of. For that reason also we think this action of trespass does not lie in the plaintiff's favor, especially where no appreciable damage has resulted to her.

*Judgment for defendants.*